# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MEGAN VOEKS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>PATENAUDE & FELIX, A.P.C., TD BANK USA, N.A., and TARGET CORPORATION,<br><br>Defendants. | Case No.: 18-cv-1393<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Megan Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt arose from a consumer transaction that included agreements to defer payment.

6. Defendant Patenaude & Felix, A.P.C. ("Patenaude") is a foreign professional services corporation with its principal place of business located at 4545 Murray Canyon Road, Third Floor, San Diego, CA 92123.

7. Patenaude is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Patenaude is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. Defendant is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

9. TD Bank USA, N.A. ("TD Bank") is a national bank with its primary place of business located at 2035 Limestone Road, Wilmington, DE 19808.

10. TD Bank is the issuer of Target store-branded credit cards. *See* https://www.target.com/c/redcard/-/N-4tfyn (last accessed September 5, 2018).

11. Credit card accounts are "open-end credit plans," pursuant to Wis. Stat. § 421.301(27)(a). "Open-end credit plans" are, by definition, "consumer credit transactions." Wis. Stat. § 421.301(10) ("The term [consumer credit transaction] includes … transactions pursuant to open-end credit plans.")

12. TD Bank is thus a "merchant" as defined in the WCA, as the alleged debts arise from use of Plaintiff's consumer credit accounts. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

13. Target Corporation ("Target") is a foreign corporation with its principal place of business located at 1000 Nicollet Mall, Minneapolis, MN 55403.

14. Target is the servicer of Target store-branded credit card accounts.

15. Target and TD Bank, indirectly through Target and Paternaude, are engaged in the business of collecting debts owed to TD Bank that were incurred for personal, family, or household purposes.

16. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

17. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

18. On its face, the WCA's regulation of debt collectors applies without distinction to creditors collecting on their own behalf, to creditors who hire other debt collectors to collect on the creditor's behalf, and to third-party debt collectors acting on behalf of creditors. *See* Wis. Stat. § 427.103(3).

19. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

20. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection

law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

21. Target and TD Bank, directly or indirectly, are each a debt collector under Wis. Stat. § 427.103(3).

22. Any company meeting the definition of a "debt collector" (here, TD Bank) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

## FACTS

23. On or about July 27, 2018, Patenaude mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "TD Bank USA, N.A. / Target Credit Card." A copy of this letter is attached to this Complaint as Exhibit A.

24. Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, or household purposes, namely through use of a store-branded credit card at Target Stores.

25. Upon information and belief, Exhibit A is a form letters, generated by computer, and with the information specific to Plaintiff inserted by computer.

26. Upon information and belief, Exhibit A is a form debt collection letter used by Patenaude to attempt to collect alleged debts.

27. Upon information and belief, Exhibit A was the first letter Patenaude sent Plaintiff regarding the alleged debt to which the letter refers.

28. Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

29. Exhibit A lists the "Total Due" on the account as $1,556.94.

30. Exhibit A also lists the "Minimum Due" on the account as $84.00.

31. On or about July 26, 2018, about one day before Paternaude sent to Plaintiff such collection letter, Exhibit A, Target Card Services mailed a billing statement to Plaintiff regarding the same alleged debt. A copy of this billing statement is attached to this Complaint as Exhibit B.

32. Exhibit B lists a "New Balance" of $1,556.94, which is the same amount listed as the "Total Due" in Exhibit A.

33. Exhibit B, however, lists a "Minimum Payment Due" of $777.00, which is significantly greater than the "Minimum Due" of $84.00 listed by Exhibit A.

34. Exhibit A is thus false or misleading as to the amount necessary to bring the account current.

35. Additionally, by listing both a "Total Due" and "Minimum Payment Due," Exhibit A is misleading as to the amount of the debt Patenaude sought to collect.

36. Moreover, Patenaude lacked the legal authority to demand the total balance of the account. Credit card transactions are, by definition, consumer credit transactions. Wis. Stat. § 421.301(10).

5

37. Upon information and belief, at the time Patenaude sent Exhibit A to Plaintiff, the creditor had not provided Plaintiff with notice of her right to cure the default on her account, which is required before accelerating the debt. Wis. Stat. § 425.105(1), (2). TD Bank and Patenaude thus lacked the right to accelerate the maturity of the credit card account.

38. Lastly, Exhibit A is printed on Patenaude's letterhead, which identifies the organization as the "Law Offices of Patenaude & Felix. A.P.C. – A Professional Legal Corporation."

39. Beneath the body of the collection letter, Exhibit A also includes a signature line reading "Law Office of Patenaude & Felix," which appears to bear a signature.

40. Exhibit A thus falsely implies that an attorney was meaningfully involved in the collection of the alleged debt in October 2017.

41. The unsophisticated consumer, receiving a letter from a law firm, believes that that law firm has been hired to sue the consumer, and that an attorney is personally and professionally involved in the consumer's file.

42. The Seventh Circuit has stated: "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir.1996).

43. "If a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become

6

professionally involved in the debtor's file." *Id.*; *see also Clomon v. Jackson,* 988 F.2d 1314, 1320-21 (2d Cir. 1993).

44. The Third Circuit has held that collection letters purporting to be "from an attorney" when there was no actual attorney involvement violated the FDCPA, even though the letters included an attempted disclaimer of attorney involvement. *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 995 (3d Cir. 2011).

45. Other Circuits have held that "a lawyer acting as a debt collector must notify the consumer, through a clear and prominent disclaimer in the letter, that the lawyer is wearing a 'debt collector' hat and not a 'lawyer' hat when sending out the letter."

46. Exhibit A does not include any language in the nature of a disclaimer of attorney involvement, let alone a "clear and prominent disclaimer" like the one discussed in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361-62 (2d Cir. 2005).

47. Patenaude is a high-volume debt collector.

48. Upon information and belief, at the time Exhibit A was mailed to Plaintiff and the class, no attorney had assessed the validity of the alleged debts to the standards required of an attorney.

49. Upon information and belief, from the time that consumer debts are placed with Patenaude for collection until the time that a legal complaint is drafted, the only employees of Patenaude who are directly involved in the collection process of consumer debts are non-attorneys.

50. Moreover, Patenaude is frequently engaged to send collection letters to consumers with no intent that Patenaude will ever file a lawsuit to collect the debt.

51. Upon information and belief, a significant portion of Patenaude's debt collection activities during that time period consists of computer-automated processes, including the sending of computer-generated form letters like <u>Exhibit A</u>.

52. Upon information and belief, at the time <u>Exhibit A</u> was mailed to Plaintiff and the class, no attorney associated with Patenaude had reviewed any documentation underlying the alleged debts, including but not limited to any contract, payment history or any other documents establishing or evidencing the alleged debts.

53. Upon information and belief, at the time <u>Exhibit A</u> was mailed to Plaintiff, no attorney associated with Patenaude had reviewed anything relating to Plaintiff's account. Instead, a computer or a non-attorney assistant at Patenaude or a third party mailing company generated and mailed <u>Exhibit A</u> as part of a batch of identical, except for personal information, form debt collection letters.

54. Upon information and belief, at the time <u>Exhibit A</u> was mailed to Plaintiff and the class, no attorney associated with Patenaude had exercised the professional judgment of an attorney that Plaintiff or any other class member was delinquent on his or her debt and a candidate for legal action, nor was any attorney associated Patenaude meaningfully involved in the decision to send <u>Exhibit A</u> to Plaintiff and the class.

55. Upon information and belief, no attorney associated with Patenaude personally reviews each class member's collection letter in any meaningful sense, before the letter is mailed.

56. Upon information and belief, no attorney associated with Patenaude makes an individualized assessment of the class member's circumstances or liability, before <u>Exhibit A</u> is mailed to each class member.

57. Additionally, on or about July 10, 2018, approximately two weeks before Plaintiff was sent the above mentioned letter and billing statement, Exhibit A and Exhibit B respectively, Target sent Plaintiff another debt collection letter regarding the same alleged debt. A copy of this letter is attached to the complaint as Exhibit C.

58. Upon information and belief, Exhibit C is a form letters, generated by computer, and with the information specific to Plaintiff inserted by computer.

59. Upon information and belief, Exhibit C is a form debt collection letter used by Target to attempt to collect alleged debts.

60. Exhibit C includes the following statement:

> If we do not receive an acceptable payment, your Target Credit Card account will be placed with the law firm of Patenaude & Felix for further collection efforts, including evaluation for possible legal action.

61. Exhibit C thus threatens to take legal action against Plaintiff.

62. The representation in Exhibit C that legal action will be taken against Plaintiff is false, deceptive, and misleading and falsely threaten to take an action which neither Target nor TD Bank were legally entitled to take or actually intend to take.

63. TD Bank and Target were not legally entitled to commence legal action against Plaintiff. Upon information and belief, at the time Target sent Exhibit C to Plaintiff, neither Target nor TD Bank had provided Plaintiff with notice of her right to cure the default on her account, which is required before commencing an action to recover a consumer debt. Wis. Stat. § 425.105(1), (2).

64. Moreover, TD Bank is a national credit card lender whose Target credit card portfolio was worth $6 billion in 2012. It does not forward every allegedly delinquent account, or even every account belonging to a class member in this action, to an attorney if not resolved in

non-attorney collections. Upon information and belief, TD Bank often sells delinquent accounts to debt buyers, or retains another non-attorney debt collector, or takes no action, instead of litigating.

65. To date, no law suit has been filed against Plaintiff with regard to the alleged debt referenced in Exhibits A-C.

66. Plaintiff was misled, deceived, and confused by Exhibit A and Exhibit C.

67. The unsophisticated consumer would be misled, deceived, and confused by Exhibit A and Exhibit C.

### *The FDCPA*

68. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v.*

10

*T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute,"

11

(quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

69. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

70. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

71. 15 U.S.C. § 1692e(3) specifically prohibits: "The false representation or implication that any individual is an attorney or that any communication is from an attorney."

72. 15 U.S.C. § 1692e(2)(A) specifically prohibits the false representation of "the character, amount, or legal status of any debt."

73. 15 U.S.C. § 1692e(5) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

74. 15 U.S.C. § 1692e(10) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

75. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

12

76. 15 U.S.C. § 1692g(a)(1) requires that, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," that a debt collector provide notice of "the amount of the debt."

### *The WCA*

77. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

78. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

79. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

80. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

81. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

13

82. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

83. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

84. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

85. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

86. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

87. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

88. Wis. Stat. § 427.104(1)(k) specifically prohibits a debt collector from using "a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney−at−law when it is not.

89. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

90. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

91. Count I is brought against Defendant Patenaude.

92. By listing a different amount as the "Minimum Due" from the amount listed as the "Minimum Payment Due" by the creditor, Exhibit A is false or misleading as to the minimum amount necessary to bring the account current.

93. By listing both a "Minimum Due" as well as the "Total Due," Exhibit A is misleading as to the amount of the debt sought by Patenaude.

94. By listing the total balance of the account as the "Total Due," Exhibit A is misleading as to the legal status of the alleged debt and threatens to take any action that cannot legally be taken.

95. Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

15

## COUNT II – WCA

96. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

97. Count II is brought against Defendants Patenaude and TD Bank.

98. By listing a different amount as the "Minimum Due" from the amount listed as the "Minimum Payment Due" by the creditor, Exhibit A is false or misleading as to the minimum amount necessary to bring the account current.

99. By listing both a "Minimum Due" as well as the "Total Due," Exhibit A is misleading as to the amount of the debt sought by Patenaude.

100. By listing the total balance of the account as the "Total Due," Exhibit A is misleading as to the legal status of the alleged debt and threatens to take any action that cannot legally be taken.

101. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT III – FDCPA

102. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

103. Count III is brought against Defendant Patenaude.

104. Exhibit A creates the false impression that an attorney at Patenaude had personally reviewed the circumstances of Plaintiff's and class members' alleged debts and Exhibit A itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letters were mailed to Plaintiff and class members.

16

105. Before mailing <u>Exhibit A</u> to Plaintiff and the class, no attorney at Patenaude had any meaningful involvement with Plaintiff's or class members' alleged debts or the letters. *Avila*, 84 F.3d at 229; *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

106. Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(3), 1692e(10), and 15 U.S.C. § 1692f.

## COUNT IV – WCA

107. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

108. Count IV is brought against Defendants Patenaude and TD Bank.

109. <u>Exhibit A</u> creates the false impression that an attorney at Patenaude had personally reviewed the circumstances of Plaintiff's and class members' alleged debts and <u>Exhibit A</u> itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letters were mailed to Plaintiff and class members.

110. Before mailing <u>Exhibit A</u> to Plaintiff and the class, no attorney at Patenaude had any meaningful involvement with Plaintiff's or class members' alleged debts or the letters. *See Avila*, 84 F.3d at 229; *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

111. Defendants violated Wis. Stat. § 427.104(1)(k).

## COUNT V - WCA

112. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

113. Count IV is brought against Defendants TD Bank and Target.

114. Exhibit C threatens that legal action may soon be taken against Plaintiff even though neither TD Bank nor Target were legally entitled to take such action or actually intended to commence legal action against Plaintiff.

115. Defendants violated Wis. Stat. § 427.104(1)(L).

## CLASS ALLEGATIONS

116. Plaintiff brings this action on behalf of two classes.

117. Class I consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) Between September 7, 2017 and September 7, 2018, inclusive, (e) that was not returned by the postal service.

118. Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit C to the complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) Between September 7, 2017 and September 7, 2018, inclusive, (e) that was not returned by the postal service.

119. The classes are each so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

120. There are questions of law and fact common to the members of the classes, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A and Exhibit C violate the FDCPA and/or WCA.

121. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

122. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

123. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

124. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: September 7, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000 | (414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com